# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

**UNITED STATES OF AMERICA**                                        **PLAINTIFF**

**v.**                                        **CAUSE NO. 1:12-cr-103-LG-RHW-1**

**DIEGO BARBA-ORTIZ**                                        **DEFENDANT**

## ORDER DENYING DEFENDANT'S MOTION
## FOR COMPASSIONATE RELEASE

**BEFORE THE COURT** is the [92] Motion for Compassionate Release filed by Defendant Diego Barba-Ortiz.  The Government filed a [94] Response in opposition to the Motion for Compassionate Release.  Barba-Ortiz filed a [96] Reply to the [94] Response.  After reviewing the submissions of the parties, the record in this matter, and the applicable law, the Court finds that there are no extraordinary and compelling reasons justifying a sentence reduction.

## BACKGROUND

Defendant Barba-Ortiz, a citizen of Mexico, pled guilty to one count of possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1).  The amount of actual methamphetamine seized totaled 6.62 kilograms.  The Probation Office prepared a Presentence Investigation Report (PSR), determining that the base offense level was 38.  [63 p. 5].  Two levels were added due to Defendant's role as an organizer, manager, or supervisor of the criminal activity, and three levels were subtracted due to Defendant's acceptance of responsibility, for a final offense level of 37.  *Id*. at 6–7.  The Probation Office determined that the criminal history category was I.  *Id*. at 7.  Therefore, the

-1-

guideline imprisonment range was 210 months to 262 months and five years supervised release. *Id.* at 9. On September 5, 2013, the Court sentenced Defendant to 210 months' imprisonment and five years of supervised release. [64]. According to the Bureau of Prisons' website, Defendant's projected release date is January 2, 2027. The defendant is subject to a United States Immigration and Customs Enforcement (ICE) detainer upon his release from prison.

On June 24, 2024, Defendant filed a [92] Motion for compassionate release, proceeding pro se. He argues that there are extraordinary and compelling reasons supporting early release, citing an unusually long sentence, his immigration status, and his conditions of confinement. *Id.* at 1, 17, 23. If he were sentenced today, Barba-Ortiz argues that he would have a significantly reduced sentence under current law because his offense level would be lower. *Id.* at 17, 20. He argues that his immigration status meets the gravity of the listed factors under § 1B1.13(b). He contends that the Covid-19 conditions, in conjunction with the other claims, also amounts to an extraordinary and compelling circumstance. [96 p. 1 n.1]. He further argues that the § 3553 factors weigh in favor of his release. [92 p. 26]. The Government filed a [94] Response in opposition to the [92] Motion on July 8, 2024. Barba-Ortiz filed a [96] Reply on August 22, 2024.

## DISCUSSION

A final judgment "may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (citation omitted). To determine that a court may modify the term of imprisonment, the prisoner

seeking compassionate release must prove: (1) "extraordinary and compelling

reasons" justify the sentence's reduction; (2) "such a reduction is consistent with"

the Sentencing Commission's applicable policy statements; and (3) the 18 U.S.C.

§ 3553(a) sentencing factors weigh in favor of the requested relief.  18

U.S.C. § 3582(c)(1)(A); *see United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir.

2022).  "Extraordinary and compelling reasons exist under any of the following

circumstances or a combination thereof[.]"  U.S.S.G. § 1B1.13(b).

> Those [circumstances] include certain medical conditions of the
> defendant; defendant being housed at a facility affected, or at
> imminent risk of being infected, by an ongoing outbreak of an
> infectious disease or a public health emergency; defendant's age and
> "experiencing a serious deterioration in physical or mental health
> because of the aging process"; defendant's family circumstances;
> defendant being a victim of abuse; or other reasons that "are similar in
> gravity."

*United States v. Ayelotan*, No. 1:14cr33-HS-BWR-1, 2024 WL 3904989, at *3

(S.D. Miss. Aug. 22, 2024) (quoting U.S.S.G. § 1B1.13(b)(1)–(5)).

Additionally, where a prisoner "received an unusually long sentence

and has served at least 10 years of the term of imprisonment," a court may

consider a change in the law (unless the change is not retroactive), "but only

where such change would produce a gross disparity between the sentence

being served and the sentence likely to be imposed at the time the motion is

filed" and still after consideration of the prisoner's " individualized

circumstances."  U.S.S.G. § 1B1.13(b)(6).  Otherwise, "a change in the law

(including an amendment to the Guidelines Manual that has not been made

retroactive) shall not be considered for purposes of determining whether an

extraordinary and compelling reason exists under this policy statement."
U.S.S.G. § 1B1.13(c). But "if a defendant otherwise establishes that
extraordinary compelling reason warrant a sentence reduction under this
policy statement, a change in the law" including nonretroactive amendments
to the Guidelines Manual "may be considered for purposes of determining the
extent of any such reduction." *Id.* Finally, "rehabilitation of the defendant is
not, by itself, an extraordinary and compelling reason for purposes of this
policy statement. However, rehabilitation of the defendant while serving the
sentence may be considered in combination with other circumstances in
determining whether and to what extent a reduction" in imprisonment is
warranted. U.S.S.G. § 1B1.13(d). The defendant bears the burden of
persuasion. *Ward v. United States*, 11 F.4th 354, 361 (5th Cir. 2021) (citation
omitted). The Government has not raised any failure-to-exhaust on the part
of Barba-Ortiz, *see* [94], so the Court may consider the Motion on its merits.

UNUSUALLY LONG SENTENCE

The 782 Amendment to the Guidelines that retroactively lowered base
level offenses is inapplicable in this case. The current Guidelines place 4.5
kilograms or more of actual methamphetamine at a Level 38 base Offense
Level. U.S.S.G. § 2D1.1(c)(1). The defendant did not challenge the PSR
finding that he was accountable for 6.62 kilograms of actual
methamphetamine. *See* [63 p. 5]. Therefore, the base level offense for the

methamphetamine in this case is still 38, which is the same base level he received in the PSR.

Defendant asks the Court to disagree with the current Guidelines 10:1 actual methamphetamine versus mixture ratio. [96 p. 1]. While it is true that at least twelve district courts have deviated from the Guidelines for actual methamphetamine violations, *see United States v. Celestin*, No. 21-125, 2023 WL 2018004, at *3 (E.D. La. Feb. 15, 2023) (citations omitted); *United States v. Robinson*, No. 3:21-cr-14-CWR-FKB-2, 2022 WL 17904534 (S.D. Miss. Dec. 23, 2022), this Court is not convinced that the Guidelines should be rejected on policy grounds. This Court previously reasoned that if courts

> find that such policy disagreement creates an "extraordinary and compelling reason" for early release, the Court would likely open the floodgates to effectually resentence each defendant who had been sentenced by a judge who utilized the sentencing guidelines as written at sentencing. It is better that consideration of such disparity be taken at the time of sentencing.

*United States v. Rodriguez-Flores*, No. 2:05-CR-21-KS-MTP, 2023 WL 4306755, at *4 n.10 (S.D. Miss. June 30, 2023). As *Celestin*, *Robinson*, and the other district court decisions are not binding precedent, this Court will not adopt these decisions. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011). "[A] defendant cannot use motions for compassionate release 'to challenge the legality or the duration of his sentence' or 'to correct sentencing errors[.]'" *United States v. Bradley*, No. 1:17cr9-HSO-RHW-1, 2024 WL 625313, at *3 (S.D. Miss. Feb. 14, 2024) (quoting *United States v. Escajeda*,

58 F.4th 184, 187 (5th Cir. 2023)).  Mr. Barba-Ortiz, through his motion for compassionate release, attempts to "substitute . . . a postconviction motion [and] argue that the Court erred in sentencing by applying the Guidelines' treatment of methamphetamine."  *See id.*  This substitution is rejected.  *See id.* (citing *Escajeda*, 58 F.4th at 187).  Therefore, because there is not a change in the law regarding the base level offense for 6.62 kilograms of methamphetamine and the Court continues to follow the Guidelines, the original sentence imposed is not unusually long.  *See* U.S.S.G. § 1B1.13(b)(6).

IMMIGRANT STATUS

The *Padilla v. Kentucky*, 559 U.S. 356 (2010) decision, which "held that criminal defense attorneys must inform non-citizen clients of the risks of deportation arising from guilty pleas[,]" is a non-retroactive change in the law.  *Chaidez v. United States*, 568 U.S 342, 345–46, 358 (2013).  The Fifth Circuit recently held that district courts have the discretion to find that non-retroactive changes in the law, combined with additional facts, may amount to an extraordinary and compelling reason.  *United States v. Jean*, 108 F.4th, 275, 281 (5th Cir. 2024).  The *Jean* court found a non-retroactive change in the law combined with an extraordinary rehabilitation amounted to an extraordinary and compelling reason warranting a compassionate release.  *Id.*  This finding of extraordinary rehabilitation included letters of support by Bureau of Prisons (BOP) officials, including managers and supervisors with decades of experience.  *Id.* at 280.  These letters described Jean as "a

valuable, trustworthy, and indispensable asset," and a rare "inmate that has truly worked on himself from the day of his admittance in the custody of the [BOP], at bettering himself, for an eventual successful return into society." *Id.* at 280–81 (alterations original). The district court observed that "Jean exuded a level of sincerity . . . that the Court has never before witnessed from a criminal defendant[,]" and "[t]he term 'rare' does not give Mr. Jean's rehabilitation and renewed outlook on life justice—it is wholly extraordinary." *Id.* at 281. The Fifth Circuit agreed with the district court that, in combination, a non-retroactive change in the law and extraordinary rehabilitation constitute compelling and extraordinary reasons.

Mr. Barba-Ortiz's situation does not match *Jean*'s combination of a non-retroactive change in the law and extraordinary rehabilitation. He recites *Padilla* [92 p. 22], and in a previous motion, he provided evidence of the numerous education courses he has taken while in BOP custody. *See* [88-4]. He also earned a GED while incarcerated. *Id.* While these are certainly commendable accomplishments, they do not reach the levels of "rare" or "wholly extraordinary" that present a "comprehensive record of rehabilitation." *See Jean*, 108 F.4th at 281.

Additionally, Mr. Barba-Ortiz's contention that his inability to avail himself of BOP education credits for time off that he might have received as a U.S. citizen simply does not meet the gravity of the extraordinary and compelling reasons listed in § 1B1.13(B). [92 pp. 22-23]. Thus, Mr. Barba-

Ortiz's immigration status is not an extraordinary and compelling reason to warrant compassionate release.

**COVID-19**

Defendant withdrew the argument that Covid-19 alone is an extraordinary and compelling circumstance, but he asks the Court to consider the conditions in conjunction with the other claims. Because the Court has already found a lack of extraordinary and compelling circumstances regarding the sentence length and immigration implications, the Court will not address the Covid-19 conditions.

**18 U.S.C. § 3553(A) SENTENCING FACTORS**

Even if there were any extraordinary and compelling reasons present, the Court further finds that the applicable factors in § 3553(a) do not merit compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Chambliss*, 948 F.3d 691, 693–94 (5th Cir. 2020). These factors offer "an alternative basis for denying relief." *United States v. McFadden*, No. 20-40801, 2022 WL 715489, at *3 (5th Cir. Mar. 9, 2022) (citing *Chambliss*, 948 F.3d at 693–94). "The court's application of the § 3553(a) factors is discretionary." *United States v. Bolton*, No. 09-166, 2024 WL 1966448, at *9 (E.D. La. May 3, 2024) (citing *Ward*, 11 F.4th at 360). The § 3553 factors include: "the nature and circumstances of the offenses of conviction and the history of the Defendant, and the need for the sentence imposed to reflect the seriousness of the offenses, to promote respect for the law, to provide just

punishment, to afford adequate deterrence, and to protect the public."
*Ayelotan*, 2024 WL 3904989, at *5 (citing 18 U.S.C. § 3553(a)).

The PSR found Defendant's total offense level was a 37 and a criminal
history category of I resulted in a Guideline range of 210 months to 262
months. [63 p. 9]. The range was based on the amount of actual meth
recovered, the defendant's role as a manager or supervisor, and the
defendant's acceptance of responsibility. *Id.* at 6–7. The Court sentenced
Barba-Ortiz to a 210 month term of imprisonment, followed by five years of
supervised release. *See* [64]. The large quantity of meth, and his role as an
organizer or supervisor, presents a serious crime.

Beginning on November 15, 2012, a cooperating source (CS) made
multiple phone calls with the defendant, and his co-defendant, to coordinate
the delivery of methamphetamine from Chicago, Illinois, to Gulfport,
Mississippi. The Defendant flew from Guadalajara, Mexico, to Atlanta,
Georgia, and then to Gulfport, Mississippi, on November 27, 2013. On
November 28, 2012, the Drug Enforcement Agency (DEA) used the CS to
make the purchase at a Best Western Hotel. During the exchange,
surveillance observed the co-defendant exit the hotel with a backpack,
containing 7.89 kilograms of methamphetamine. The DEA executed arrests
of the defendant and co-defendant after the purchase. The CS reported that
Barba-Ortiz instructed the co-defendant to go to the lobby through a phone
call. The DEA investigation showed that Barba-Ortiz was the manager of the

transaction by controlling the meeting arrangements; the price of the drugs;

delivery of the drugs; and the co-defendant's actions, who acted as the drug

courier.

In view of the nature and circumstances of his offense, the Court

cannot conclude that compassionate release for Mr. Barba-Ortiz promotes

respect for the law, provides just punishment, or affords adequate deterrence.

Therefore, the § 3553 factors do not weigh in favor of compassionate release

for the Defendant.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [92]

Motion for Compassionate Release filed by Defendant Diego Barba-Ortiz is

**DENIED**.

**SO ORDERED AND ADJUDGED** this the 21st day of October, 2024.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE